1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
2                         WESTERN DIVISION

3    UNITED STATES OF AMERICA,        Docket No. 3:19CR4

4            Plaintiffs,              Toledo, Ohio

5            v.                       August 29, 2019

6    ELIZABETH R. LECRON,

7            Defendant.

8    ------------------------------

9                 TRANSCRIPT OF CHANGE OF PLEA
               BEFORE THE HONORABLE JAMES G. CARR
10                UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the Plaintiffs:  Michael J. Freeman
                          Office of the U.S. Attorney
14                        Four SeaGate, Suite 308
                          Toledo, Ohio 43604
15                        (419) 242-5675

16

17   For the Defendant:
                          Donna Grill
18                        Office of the Federal Public Defender
                          Toledo, Ohio 43604
19                        (419) 259-7370

20

21   Court Reporter:      Angela D. Nixon, RMR, CRR
                          1716 Spielbusch Avenue
22                        Toledo, Ohio 43624
                          (419) 260-5259

23

24   Proceedings recorded by mechanical stenography, transcript

25   produced by notereading.

```
 1              COURTROOM DEPUTY:  Case 3:19CR04, United States
 2    of America versus Elizabeth Lecron, matter called for
 3    arraignment on superseding information.
 4              THE COURT:  Record should show defendant's
 5    present in court with her attorneys Donna Grill and
 6    Claire -- I'm sorry, I've forgotten your last name.
 7              MS. CAHOON:  Cahoon, Your Honor.
 8              THE COURT:  Cahoon, C-A-H-O-O-N, not Calhoun but
 9    Cahoon?
10              MS. CAHOON:  That's correct, Your Honor.
11              THE COURT:  And that the government's represented
12    by AUSAs Michael Freeman and Tracey Tangeman.  Anybody else
13    at counsel table with you, counsel?
14              MR. FREEMAN:  There is not, Your Honor.
15              THE COURT:  Okay.  It's my understanding two
16    things are expected to happen, but the first is that the
17    government is apparently going to file a superseding
18    information, and it's anticipated that the plaintiff will
19    waive the indictment and reading thereof and consent to
20    proceeding further on that -- those charges, which I will
21    have you summarize for her.  And also, Ms. Grill, has your
22    client seen and read the superseding information?
23              MS. GRILL:  Yes, Your Honor.
24              THE COURT:  Okay.  Ms. Lecron, is that correct,
25    have you read the superseding information?
```

```
 1              THE DEFENDANT:  Yes, Your Honor.

 2              THE COURT:  And has Ms. Grill gone over it with

 3    you?

 4              THE DEFENDANT:  Yes, Your Honor.

 5              THE COURT:  Has she explained what it says and

 6    what that means?

 7              THE DEFENDANT:  Yes, Your Honor.

 8              THE COURT:  Did you -- do you understand it?

 9              THE DEFENDANT:  Yes.

10              THE COURT:  You understand the nature of the

11    charges that it is making against you?

12              THE DEFENDANT:  Yes, Your Honor.

13              THE COURT:  Also, my understanding, second, that

14    the defendant anticipates offering -- offering a plea of

15    guilty to that rather than a plea of not guilty, so I'll

16    hold your plea in abeyance until we go through that

17    process.  Won't be necessary, Ms. Grill, for you to offer a

18    plea until we've gone through the Rule 11 colloquy.

19              Before I proceed, I'm going to ask Deanna if

20    you'll swear the defendant in, please.

21                      ELIZABETH R. LECRON,

22    was herein, called as if upon examination, was first duly

23    sworn, as hereinafter certified, and said as follows:

24              THE COURT:  You may be seated.  Okay.

25              Ms. Tangeman, Mr. Freeman, if you want to
```

1    proceed, have you already filed the superseding

2    information?

3            MR. FREEMAN:  That is correct, Your Honor.  About

4    roughly an hour ago the superseding information was filed,

5    which does replace the indictment in this particular case.

6    The superseding information is a -- is of two counts.

7            Count 1 of the superseding information is

8    conspiracy to provide material support or resources to

9    terrorists in violation of Title 18, United States Code

10   Section 2339A.  The statutory penalties associated --

11   associated with that violation is a maximum term of

12   imprisonment of 15 years, maximum statutory fine of

13   $250,000, maximum period of supervised release of life,

14   with a $100 special assessment.

15           Count 2 of the superseding information that was

16   filed earlier today is transporting explosives in

17   interstate commerce, in violation of Title 18, United

18   States Code Section 844(d).  The maximum term of

19   imprisonment for that subsection is ten years of

20   imprisonment, maximum statutory fine of $250,000, a maximum

21   period of three years of supervised release, and a $100

22   mandatory special assessment.

23           It's my understanding that the defendant will

24   plead guilty to both counts in the superseding information

25   today.

1              THE COURT:  Okay.  Did you hear what the

2    prosecutor just recited?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Does that accord with your

5    understanding of the charges contained in the superseding

6    information?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Okay.  And, once again, you've had an

9    opportunity to go over that document with your lawyer?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Okay.  And you're fully satisfied

12   that you understand what the document says and what it

13   alleges?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  And the consequences upon conviction?

16             THE DEFENDANT:  Yes.

17             THE COURT:  In other words, what happens if

18   you're convicted, potential penalties?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Okay.  Do you want the document read

21   to you?

22             THE DEFENDANT:  No.

23             THE COURT:  Okay.

24             THE DEFENDANT:  No, Your Honor.

25             THE COURT:  You have the right to have a case

1    against you, any federal felony case proceed against you by

2    way of grand jury indictment, has occurred with the

3    indictment, that now the government wish to supersede with

4    the information.  If you want to, the government can be

5    required to present this document to the federal grand jury

6    to present evidence and have the grand jury determine

7    whether to bring these charges, do you understand that?

8              THE DEFENDANT:  I do, Your Honor.

9              THE COURT:  And is my understanding correct that

10   you're willing to waive, that is give -- give up your right

11   to grand jury prosecution and to proceed on the charge made

12   by the prosecutor in the superseding indictment?

13             THE DEFENDANT:  That is correct, Your Honor.

14             THE COURT:  And my understanding, to look ahead a

15   bit, in our anticipation, is my understanding that your

16   decision to do so is part of an overall plea agreement

17   between you and the United States government?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  I know I will ask you later, have you

20   read that agreement?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Do you understand it?

23             THE DEFENDANT:  I do, Your Honor.

24             THE COURT:  And did Ms. Grill have an opportunity

25   to review it with you?

1              THE DEFENDANT:  Yes, Your Honor.

2              THE COURT:  And did she undertake to negotiate

3      that agreement with your consent and encouragement?

4              THE DEFENDANT:  Yes, absolutely.

5              THE COURT:  Are you fully and completely

6      confident that she's kept you absolutely informed at every

7      step along the way leading to this afternoon?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Are you fully and completely

10     satisfied that she has undertaken, to the best of her

11     ability, to represent you faithfully and adequately as

12     provided under the Constitution and laws of the United

13     States?

14             THE DEFENDANT:  Absolutely.

15             THE COURT:  Has she spent enough time with you

16     since being assigned as your attorney?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Has there been any way that you feel

19     short changed with regard to the time or attention that she

20     has given you?

21             THE DEFENDANT:  No, Your Honor.

22             THE COURT:  Is there anything that she did that

23     you told her not to do while representing you?

24             THE DEFENDANT:  No, Your Honor.

25             THE COURT:  Is there anything you told her to do,

1    you know, go talk to this witness, file that sort of

2    motion, undertake this approach, that approach, or do the

3    other thing, is there anything that you told her to do that

4    she simply did not do?

5              THE DEFENDANT:  No, Your Honor.

6              THE COURT:  Or if you told her to do something,

7    did she take the time to explain to you why she had decided

8    not to do it --

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  -- if there were such a thing?

11             THE DEFENDANT:  Yeah.

12             THE COURT:  And if there were such a thing

13   involving the law, sort of motions or whatever, did she

14   explain the legal reasons why she didn't think it would be

15   in your self interest or appropriate to file those motions?

16             THE DEFENDANT:  Yes, she did, Your Honor.

17             THE COURT:  What about in terms of other aspects

18   or representation, if she undertook to do things that you

19   thought a lawyer should do on your behalf in the situation

20   in which you find yourself, and she didn't do them, did

21   she -- did she tell you why?  Did she explain, well, you

22   shouldn't do that or can't do that or whatever, you

23   understand what I'm saying?

24             THE DEFENDANT:  Yes, she took her time to explain

25   everything.

1              THE COURT:  Are you fully and completely

2     satisfied --

3              THE DEFENDANT:  Yes, I am, Your Honor.

4              THE COURT:  -- from the outset of her

5     representation of you that she's given you and your case

6     enough time and attention to prepare both herself to serve

7     adequately as your lawyer, but also to prepare you for each

8     step of the proceeding?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Okay.  Ms. Grill, or Mr. Freeman,

11    Ms. Tangeman, are you able to represent to me that the

12    government followed the customary practice with regard to

13    making known to defense counsel either the essence, or

14    basically all of the evidence and information that the

15    government gathered during its investigation leading up to

16    the initial indictment?

17             MR. FREEMAN:  That is correct, Your Honor.  What

18    is typical procedure here, at least in this division, is

19    that we provide discovery in excess, under our obligations

20    under Criminal Rule 16, Brady, Giglio and Jencks.  To put

21    it in more simple terms, basically what we have, the

22    defense has, Your Honor.

23             THE COURT:  Yes, and of course that's customary

24    in this courthouse.

25             MR. FREEMAN:  Yes, Your Honor.

1              THE COURT:  Ms. Grill, is that your

2    understanding, that you have, as typically you do,

3    basically access to whatever the government has?

4              MS. GRILL:  Yes, Your Honor.

5              THE COURT:  Ms. Lecron, do you understand what

6    I've just discussed and confirmed with Mr. Freeman and

7    Ms. Grill in terms of the extent to which all the evidence

8    that the government gathered it made available to

9    Ms. Grill, do you understand?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  And do you understand that that is,

12   in fact, what happened?

13             THE DEFENDANT:  Yes.

14             THE COURT:  And I don't want to know any details

15   with regard to any communications between you and

16   Ms. Grill, but is it your understanding that she has shared

17   that information with you and -- shared -- first of all,

18   shared it with you?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  And could someone please have the --

21   there's a bit of noise.

22             U.S. MARSHAL:  We just sent someone out there to

23   quiet them down.

24             THE COURT:  Thanks, Deputy.

25             And I would assume, because that would be

```
 1    certainly true if I were in your situation, there was a

 2    fair amount of that stuff that you didn't understand at the

 3    outset, is that correct, or at least there was some things

 4    that you didn't fully understand or comprehend on what the

 5    government had made available?

 6              THE DEFENDANT:  Not at first, Your Honor, but I

 7    completely understand now.

 8              THE COURT:  Okay, that's my point.

 9              THE DEFENDANT:  Yes.

10              THE COURT:  And you do so because Ms. Grill took

11    the time and gave you, the case, and that information

12    enough attention to go through it and answer whatever

13    questions you had; is that correct?

14              THE DEFENDANT:  Yes, Your Honor.

15              THE COURT:  Is there any way whatsoever, or has

16    there been any time whatsoever when she failed to answer

17    whatever questions or concerns you may have had?

18              THE DEFENDANT:  No, no, Your Honor.

19              THE COURT:  And are you confident that you've

20    understood the answers she gave you and the opinions she

21    expressed?  Did you understand that?

22              THE DEFENDANT:  Yes, Your Honor.

23              THE COURT:  Once again, maybe not at the outset

24    but for the time you got together?

25              THE DEFENDANT:  Yes.
```

```
1              THE COURT:  I understand you're a layman and much

2    of this was new obviously, but my point simply is, as you

3    sit here today, you are confident that you know everything

4    you need to know, and probably more than that; is that

5    correct?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  Anything I should ask further,

8    Ms. Tangeman, Mr. Freeman, or Ms. Grill, before proceeding

9    with the Rule 11 plea colloquy?

10             MR. FREEMAN:  No, Your Honor.

11             THE COURT:  Okay.

12             MS. GRILL:  No, Your Honor, except we do need to

13   execute the waiver of indictment.

14             THE COURT:  That's right.  Okay.  Deanna's given

15   that to you.

16             COURTROOM DEPUTY:  They have it Judge.

17             THE COURT:  Okay.  Before I begin, you understand

18   that I had you take the oath to tell the truth and nothing

19   but the truth, do you understand that?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Okay.  And you understand that you

22   are duty bound in law to abide by that oath?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  To be truthful to the best of your

25   ability, you understand that even if you offer and I accept
```

1   your plea of guilty, the government could still prosecute

2   you if you were not entirely truthful for either making a

3   false statement or committing perjury, you understand that?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  All of which is to say, among other

6   things, that you obviously are the person who has most at

7   stake in this proceeding.  If at any time or in any way you

8   do not understand something, say so, I am in no rush.  I

9   have ample time and opportunity, too serious a business for

10  me to, you know, run through it and overlook something,

11  whether trivial or important, do you understand that?

12          THE DEFENDANT:  I understand, Your Honor.

13          THE COURT:  If anything is going on that you

14  don't understand, or if something's going on that you

15  didn't anticipate or doesn't -- isn't what you expected,

16  once again, just let Ms. Grill know that you want to talk

17  to her or need some clarification or whatever, okay.  And

18  by all means, let her -- if you do have any such questions

19  or having trouble following or don't understand, let her do

20  your speaking for you, take a time out, and go from there,

21  okay?

22          THE DEFENDANT:  Okay.

23          THE COURT:  And you have to say yes or no.

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Among other things, it's hard for me

1    to see somebody nodding up and down.

2              THE DEFENDANT:  Right.

3              THE COURT:  Okay.  This obviously is an extremely

4    important proceeding, and I'm quite confident you

5    understand that.

6              THE DEFENDANT:  I understand that.

7              THE COURT:  Takes several steps.  I'll tell you

8    what they are, and we'll be going through them.

9              First I have to determine that you are competent

10   to plead guilty, that is that you understand the nature of

11   the charges against you -- well, back up a little bit.

12   First of all, that your mind is clear.  To that end, I ask

13   you, I know you've been in custody, have you had any

14   alcohol within the last 24 hours?

15             THE DEFENDANT:  No, Your Honor.

16             THE COURT:  Have you had any drugs or medication

17   of any kind whatsoever in the last 48 hours?

18             THE DEFENDANT:  Yes, yes, Your Honor.

19             THE COURT:  Okay.  And what kind of medication,

20   that is prescription medication of some sort?

21             THE DEFENDANT:  Yes, Prozac is prescribed to me

22   through the jail, as is --

23             THE COURT:  I heard Prozac, but then --

24             THE DEFENDANT:  Prozac is prescribed to me

25   through the jail as is Trazodone and Depakote.

```
1                THE COURT:  And do you -- or, Ms. Grill, do you

2      know what influence any drugs of that sort have on one's

3      mental acuity and ability to communicate and understand?

4                MS. GRILL:  Your Honor, I'm not a medical expert,

5      but it's my understanding that medication has been helpful

6      to her.  I have not had any time where she's not understood

7      our communication.

8                THE COURT:  So you found no difficulty throughout

9      the course of your representation -- your ability to

10     communicate with her, or her --

11               MS. GRILL:  Yes, Your Honor.

12               THE COURT:  -- and her ability to appear to

13     understand what you were saying, formulate appropriate and

14     adequate responses to whatever you were discussing and so

15     forth?

16               MS. GRILL:  I have not had any difficulty, Your

17     Honor.

18               THE COURT:  Okay.  Is that correct, have you

19     understood everything that's gone on this afternoon?

20               THE DEFENDANT:  Yes, Your Honor.

21               THE COURT:  At any time that you've been taking

22     any of those medications, have you felt or experienced any

23     difficulty in your cognitive abilities, that is your

24     abilities to think, to understand, to express yourself, any

25     sense of a diminution of any of those abilities while on
```

1   those medications?

2             THE DEFENDANT:  No, Your Honor.

3             THE COURT:  There will be a finding that the

4   defendant is competent to offer a plea.

5             The next step is that I will advise you of your

6   basic rights under the Constitution and laws of the United

7   States, principally, but by no means alone, of your right

8   to a have a trial and trial by jury, and to advise you of

9   the fact that you'll be waiving all of the rights which I

10  enumerated if you offer a plea of guilty except the right

11  to counsel, which you keep no matter what, and the right to

12  decide before you do whether to plead guilty or to proceed

13  to trial.

14            With regard to all the other rights that I will

15  enumerate, if you offer and I accept a plea of guilty, you

16  will be waiving, you'll be giving up all those other

17  rights, do you understand that?

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  Okay.  Then I'm going to have

20  Mr. Freeman, because it's part of this process, even though

21  he just did it, to summarize the two new charges against

22  you to which the government and I gather you anticipate

23  you'll be offering a plea of guilty, and to restate the

24  maximum consequences upon conviction.

25            MR. FREEMAN:  I will, Your Honor.  I'd like to

1   just --

2           THE COURT:  Time out.  I haven't gotten there

3   yet, okay.  Go ahead.  I'm sorry.  I'm just going through

4   the steps that we're going to be taking.

5           MR. FREEMAN:  Okay.

6           THE COURT:  But you -- go ahead.

7           MR. FREEMAN:  The two charges, Your Honor, as

8   indicated at the outset of this hearing, Count 1 of the

9   superseding information is conspiracy to provide material

10  support or resources to terrorists, in violation of Title

11  18, United States Code Section 2399A.  The elements of

12  Count 1 is the defendant conspired or agreed with at least

13  one other person to provide material support or resources,

14  or to conceal and disguise the nature, location, source, or

15  ownership, of material support or resources.

16          Two, the defendant did so knowing or intending

17  that such support or resources would be used in preparation

18  for, or in carrying out a violation of 18 U.S.C. Section

19  844(i), which is malicious damage and destruction of

20  property by fire and explosive material, or 2332A, which is

21  use of weapons of mass destruction.

22          And, third, the defendant knowingly and voluntary

23  joined that conspiracy.  Count 2 of the superseding

24  information is transporting explosives in interstate

25  commerce in violation of Title 18, United States Code

```
 1   Section 844(d).  The elements of Count 2 of the superseding
 2   information is the defendant transported or received or
 3   attempted to transport or receive in interstate commerce
 4   explosive material; and, two, the defendant transported or
 5   received the explosive material with the knowledge and
 6   intent that it would be used to kill, injure, or intimidate
 7   any person, or to unlawfully damage or destroy any
 8   building, vehicle, or other real or personal property.
 9             THE COURT:  Why don't you go ahead and restate
10   the penalties upon conviction, maximum penalties.
11             MR. FREEMAN:  Certainly, Your Honor.
12             With Count 1, maximum term of imprisonment is 15
13   years, maximum statutory fine is $250,000.  The maximum
14   period of supervised release is life with a mandatory $100
15   special assessment.
16             Count 2, statutory maximum is a maximum term of
17   imprisonment of ten years, a maximum statutory fine of
18   $250,000, a maximum period of supervised release of three
19   years, and a special assessment, again, of $100.  So the --
20   those special assessments are in addition to one another,
21   meaning that a total of $200 would be due immediately upon
22   sentencing.
23             In addition to those statutory penalties to
24   either count, The Court may order the defendant to pay the
25   cost of prosecution or restitution.  And if the defendant
```

1    were to violate a term or condition of supervised release,

2    that she could be subjected to an additional period of

3    incarceration.

4            THE COURT:  Okay.  Did you hear what he said?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  Do you understand the nature of the

7    charges against you?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  I realize it's legal language, but do

10   you understand really what they're talking about?

11           THE DEFENDANT:  I understand, Your Honor.

12           THE COURT:  Okay.  And do you also understand the

13   potential -- maximum potential consequences upon

14   conviction?

15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  Okay.  Let me now return to the

17   advisement of rights.  At the outset, I've already alluded

18   to this, you have the absolute right to trial.  And if you

19   chose to have a trial, it would be a trial before a jury.

20   Do you understand that?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  If you accept, offer, and I accept a

23   plea of guilty, there'll be no further trial of any kind

24   whatsoever, do you understand that?

25           THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  The next stage will be preparation of

2     a Presentence Report, and a sentencing proceeding would

3     occur probably in about three-and-a-half months from now,

4     do you understand that.

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  You understand that if there were a

7     trial, you would have the absolute right to be present at

8     all stages of the proceeding, and nothing could happen in

9     the courtroom, and certainly nothing in front of the jury

10    unless you were in the courtroom, do you understand that?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  That is part of the right of

13    attendance, you would be able to work with your lawyer

14    during the process of selecting a jury and give her your

15    thoughts and insight and advice as to which of the jurors,

16    based upon their responses, you felt would be most fair and

17    impartial, do you understand that?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Okay.  Do you understand that if

20    there were a trial, the government would have the duty, the

21    absolute duty, to produce evidence sufficient to persuade

22    the jury that you were guilty beyond a reasonable doubt, do

23    you understand that?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  You would have no obligation of any

1    kind whatsoever to do anything during the trial, and

2    certainly nothing -- you'd have no obligation to do

3    anything to assist the government in its efforts to

4    persuade the jury that you were guilty beyond a reasonable

5    doubt, you understand that?

6              THE DEFENDANT:  Yes, Your Honor.

7              THE COURT:  That you could, though, if you chose,

8    both testify and present evidence, that would be your

9    choice with regard to whether to testify or not, do you

10   understand that?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Nobody could make you testify if you

13   did not want to, do you understand that?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  That's called the privilege against

16   self incrimination or the right not to be a witness against

17   oneself under the Constitution, you understand that?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  However, the choice of whether or not

20   to testify, if there were a trial, would be yours alone.

21   It's one of those aspects of this whole process where the

22   defendant and not the lawyer makes the decision.  Do you

23   understand that?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  Even if Ms. Grill wanted you to

1    testify, you could say you didn't want to and she would

2    abide by that, and she would continue to represent you with

3    the same degree of competence and zealous advocacy that

4    she's displayed I'm sure to you as she does in all cases,

5    regardless of the fact that you made a decision that she

6    disagreed with.  Do you understand that?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  And on the other hand, if she felt

9    equally strongly that you should not testify, but you

10   disregarded that advice because you wanted to testify, the

11   effect would be the same.  That's your decision to make,

12   and it wouldn't affect the work and effort that she put in

13   to defending you and trying to avoid a conviction.  Do you

14   understand that?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  You understand that, likewise, you,

17   working through her, would have the opportunity and right

18   if you wished to present evidence on your own behalf, that

19   is to have witnesses summoned, summoned into court, whether

20   they wanted to come or not, and to have evidence produced,

21   whether those who had that evidence wanted to produce it or

22   not, they could be compelled, without cost to you to, you

23   know, either bring the evidence or come to court and

24   testify.  Do you understand that?

25             THE DEFENDANT:  Yes, Your Honor.

1           THE COURT:  You would not have to do that, but it

2      would be really up to you, in consultation with your

3      lawyer, because it would be she who would make the various

4      decisions in that regard.  But, of course, no doubt she

5      would do so taking into consideration your concerns and

6      desires, do you understand that?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  Okay.  Do you understand that in

9      addition to the right of being present at all stages of the

10     proceeding, that you would have the right to confront the

11     witnesses?  What that really means is that you would have

12     the right to have the witnesses cross examined by

13     Mrs. Grill -- Ms. Grill, do you understand that?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  And the purpose of that, of course,

16     is to test the accuracy and credibility of any of the

17     evidence and testimony against you, do you understand that?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  You would have the right to have her

20     do that.  Likewise, what she did in that regard would be

21     her decision, but no doubt she would consult with you in

22     that regard.  Do you understand that?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Okay.  Throughout the entire course

25     of the trial, if there were a trial, which there will not

1    be if you plead guilty, you are protected by what is called

2    the presumption of innocence.  As you sit here right now,

3    even though we've talked about the likelihood, anticipation

4    of a plea of guilty, you are presumed innocent as a matter

5    of law.  Do you understand that?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  That you -- if at the end of this

8    proceeding you desire not to plead guilty, I'll set the

9    matter for trial, and all the things I'm telling you about

10   will still be yours, do you understand that?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  You will have given up none of them.

13   The government will retain the burden of proof and its

14   obligation under the Constitution and laws to have a jury

15   convict you of one or more charges, only if the government,

16   and the government alone, have presented evidence

17   sufficient to persuade the jury beyond a reasonable doubt

18   that you were guilty.  You understand that?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  You also have the absolute right to

21   be represented by counsel at all stages of the proceeding

22   as you have so far.  And as I mentioned earlier, that right

23   stays with you even if you plead guilty.  You understand

24   that?

25          THE DEFENDANT:  Yes, Your Honor.

```
1              THE COURT:  Unlike all the other rights, that
2    right stays with you even after a plea of guilty.  In
3    addition, you would retain, at least to some limited
4    extent, the right to appeal any error or mistake that I may
5    make during these proceedings or any other proceeding
6    relating to this case.  You understand that?
7              THE DEFENDANT:  Yes, Your Honor.
8              THE COURT:  I understand there's a plea
9    agreement; is that correct?
10             MR. FREEMAN:  Yes, Your Honor.
11             THE COURT:  And I assume there's been the
12   customary waiver of the right to appeal.
13             MR. FREEMAN:  That is correct, Your Honor.
14             THE COURT:  And Ms. Lecron, did you understand
15   what I just discussed in my exchange with Mr. Freeman?
16             THE DEFENDANT:  Yes, Your Honor.
17             THE COURT:  In other words, if you offer the
18   plea -- if you offer and I accept the plea of guilty --
19   basically your ability to challenge these proceedings is
20   quite limited, okay.  You could only challenge the sentence
21   and your conviction if you were able to prove that
22   Ms. Grill and other attorneys had provided Constitutionally
23   ineffective assistance of counsel.  You understand that?
24             THE DEFENDANT:  Yes, Your Honor.
25             THE COURT:  And what that means is that you would
```

1    have to prove that your lawyers didn't just make a mistake,

2    but that the mistake was of Constitutional dimension that

3    their representation was so inadequate that it violated

4    your fundamental rights under the Constitution and laws of

5    the United States, among them, but not limited to, would be

6    the right to due process of law and to competent

7    representation.  Do you understand that?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  Isn't just that I forgot to dot some

10   I or cross some T, okay?  And in addition to making that

11   showing, you would have to show that you were prejudiced by

12   that, that you suffered some legally cognizable, that is

13   legally recognizable prejudice at the outcome of this

14   proceeding, or the entire proceedings would have been

15   somehow different.  You understand that?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  And that -- that -- that is one way

18   in which -- that's one respect in which you preserve the

19   right to appeal, or to challenge your conviction or your

20   sentence, but it's very limited.  The other way is if I

21   were to impose a sentence greater than the statutory

22   maximum, you understand that?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  I understand there's certain

25   limitations on my authority to sentence you in the plea

1    agreement, we'll get to that shortly, but just by way of

2    example, let's say on Count 1 there's a 15 year maximum

3    sentence, that's the most I can impose.  Let's say I gave

4    you a 20 year sentence, beyond the -- beyond the limit that

5    the law -- you can appeal that, okay?  You understand what

6    I'm saying?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  But otherwise that's the only way in

9    which you can challenge your conviction or your sentence if

10   you offer and I accept your plea of guilty as provided in

11   your agreement with the government, you understand that?

12             THE DEFENDANT:  Yes, Your Honor.

13             THE COURT:  In other words, what we call a

14   limited right of appeal.  And has Ms. Grill gone over that

15   and explained that to you?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Jumping ahead, you've read the plea

18   agreement, right, am I correct, you've read the plea

19   agreement?

20             THE DEFENDANT:  Yes, Your Honor.

21             THE COURT:  Give me a moment, please.  And of

22   course you have the right until you do otherwise to plead

23   not guilty.

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  That even though we're going down

1    this road, at any time before we reach the end and I ask

2    you how you plead, and even then you retain the right to

3    plead not guilty and all these rights I've talked about

4    remain yours to be exercised, do you understand that?

5              THE DEFENDANT:  Yes, Your Honor.

6              THE COURT:  Counsel, have I missed anything with

7    regard to advisement of rights under Rule 11 or otherwise?

8              MR. FREEMAN:  No, Your Honor.

9              THE COURT:  Ms. Grill?

10             MS. GRILL:  No, Your Honor.  Thank you.

11             THE COURT:  Okay.  Have you understood everything

12   so far, Ms. Lecron?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  Okay.  And are things proceeding as

15   you anticipated and understood that they were likely to

16   proceed?  Did you hear what I said?

17             THE DEFENDANT:  I did not.

18             THE COURT:  And have things proceeded so far in

19   the way and manner in which you anticipated they were

20   likely to proceed?

21             THE DEFENDANT:  Yes, Your Honor.

22             THE COURT:  Okay.  Okay.  Mr. Freeman, you've

23   already restated the charges and the penalties upon

24   conviction.  I assume that you are an American citizen; is

25   that correct?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  So deportation is not a consequence,

3    I have to confirm that.  And with regard to the advisement

4    of the nature of the charge and consequences of conviction,

5    Mr. Freeman, I don't think there's any -- anymore that need

6    be said, but if so by all means go ahead.

7          MR. FREEMAN:  I don't believe there's anything

8    additional on that particular front, Your Honor.

9          THE COURT:  Okay.  Do you understand that if you

10   do offer and I accept a plea, I've already mentioned that

11   the next step is a presentence investigation and -- and the

12   sentencing proceeding, do you understand that?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  And having been advised, although it

15   may be moot in this case, that at sentencing I must give

16   due consideration to what we call the federal sentencing

17   guidelines, do you understand that?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  And, however, I am not bound by those

20   guidelines, in certain conditions I can disregard them, do

21   you understand that?

22         THE DEFENDANT:  Yes, Your Honor.

23         THE COURT:  I can impose a sentence greater than

24   the guideline or lesser than the guideline, I just can't

25   impose one greater than the statutory maximum, do you

1    understand that?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  Counsel, I would assume that given

4    the 11(c)(1)(c) nature of the plea agreement and the

5    stipulated sentence, that if I accept the agreement and the

6    plea, that will be the prescribed sentence; is that

7    correct?

8              MR. FREEMAN:  That is correct, Your Honor.

9              THE COURT:  And that's regardless of whatever the

10   guidelines may be?

11             MR. FREEMAN:  That is correct, Your Honor.

12             THE COURT:  Correct, Ms. Gill?

13             MS. GRILL:  Yes, Your Honor.

14             THE COURT:  Ms. Lecron, you understand what I

15   just said?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Basically in this case, although I

18   have to tell you what I just did about the guidelines, it

19   doesn't matter because you and the government have agreed

20   upon the sentence ultimately to be imposed; is that

21   correct?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  And what is your understanding of

24   what that sentence will be?

25             THE DEFENDANT:  Fifteen years.

1          THE COURT:  Fifteen years?

2          THE DEFENDANT:  Uh-huh.

3          THE COURT:  And that the sentence -- I'm getting

4    a little bit lawyer like here, that sentence will be 15

5    years on Count 1, which is statutory maximum, correct, that

6    you would anticipate that it will be ten years on Count 2,

7    the statutory maximum, correct?

8          THE DEFENDANT:  Correct.  Yes.  Yes, Your Honor.

9          THE COURT:  However, the sentences, you'll serve

10   them concurrently, at the same time.  In other words, it is

11   impractical, in fact, not necessarily in every respect,

12   you'll be receiving a 15 year sentence, correct?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  That's your understanding, rather

15   than potentially a 25 year sentence, you understand that?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  And that is correct, counsel, right?

18         MR. FREEMAN:  It is correct, Your Honor.  I would

19   also highlight the supervised release agreement, seeing it

20   is slightly unusual even in binding plea agreements, that

21   pursuant to the agreement that the defendant is agreeing to

22   a life term of supervision upon her release from

23   incarceration.

24         THE COURT:  Do you understand that?

25         THE DEFENDANT:  Yes, Your Honor.

```
 1                THE COURT:  And I'm sure Ms. Grill has described
 2   to you, at least in general, and I would just suspect
 3   pretty specific detail, what being on supervised release
 4   entails, in terms of how you must control and conform your
 5   conduct to the terms and conditions of supervised release
 6   and otherwise as The Court may order.  Do you understand
 7   that?
 8                THE DEFENDANT:  Yes, Your Honor.
 9                THE COURT:  And do you understand that if
10   sentence is pronounced in 14 weeks or whenever, that's what
11   happens, that period will be for the rest of your natural
12   life, do you understand that?
13                THE DEFENDANT:  Yes, Your Honor.
14                THE COURT:  You will be under Court oversight,
15   supervision and control, do you understand that?
16                THE DEFENDANT:  Yes, Your Honor.
17                THE COURT:  And that moreover, if, upon notice of
18   an allegation that you violated a term or condition of
19   supervised release, I, or my successor Judge or Judges,
20   were to find that, in fact, you had, you could be returned
21   to prison.  Do you understand that?
22                THE DEFENDANT:  Yes, Your Honor.
23                THE COURT:  Potentially for a very substantial
24   period of time, I don't know, I have no way of predicting
25   what that period might be, but, you know, it could be
```

1    substantial.  Do you understand that?

2              THE DEFENDANT:  Yes, Your Honor.

3              THE COURT:  And that's part of your agreement

4    with the government as well; is that correct?

5              THE DEFENDANT:  That's correct, Your Honor.

6              THE COURT:  Mr. Freeman, I think what I will do

7    is I will now determine -- is there a forfeiture provision

8    by the way?

9              MR. FREEMAN:  There is not, Your Honor.

10             THE COURT:  And there's no fine or restitution.

11   What I think I will do, given the fact that this is a

12   11(c)(1)(c) agreement, I think I will undertake now, a

13   little out of normal sequence, to determine whether the

14   plea will be knowing, intelligent and voluntary, and ask

15   you then, as part of outlining the factual basis upon which

16   you believe the government -- government's evidence would

17   be sufficient to convince a rationale jury that the

18   defendant is guilty beyond a reasonable doubt.  When we do

19   that, after I've determined whether the plea will be

20   offered voluntarily, that you could also then make whatever

21   reference to other terms and conditions of the agreement

22   that you see pertinent, that you think I should have her

23   confirm, in addition, once again, to confirming that she's

24   read it and understand -- understood it, but you see what

25   I'm saying?  Let me do voluntariness now, factual basis,

1   terms and conditions of the agreement then, okay?

2            MR. FREEMAN:  Yes, Your Honor.

3            THE COURT:  Work for you?  Ms. Grill, okay with

4   you?

5            MS. GRILL:  Yes, Your Honor, that's fine.

6            THE COURT:  I'm assuming, because we all know

7   11(c)(1)(c) agreements are fairly unusual, okay, now I have

8   to determine whether your plea, when and if offered this

9   afternoon, is a voluntary decision.  And by voluntary, I

10  mean that it is your choice, having considered the various

11  options, and being convinced that you have been well

12  prepared and well advised by capable counsel, that in light

13  of those options, it's the best thing for you to do as you

14  understand those options, you understand what I'm saying?

15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  Speak more plainly, you find yourself

17  in a very tight and undesirable place, correct?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  That you understand -- or you should

20  understand that I understand nobody ever really wants --

21  wants to plead guilty to a federal felony of any kind

22  whatsoever, you understand that?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  But that's not the issue, whether you

25  really want to do it or not, the question is do you desire

1   to do it, and is that choice your own choice, and is it one

2   that you are convinced is the best choice for you to make?

3            THE DEFENDANT:  It is the choice I would like to

4   make, yes, Your Honor.

5            THE COURT:  Okay.  And are you confident that in

6   coming to that conclusion --

7            THE DEFENDANT:  Yes, Your Honor.

8            THE COURT:  -- that -- are you confident that

9   Ms. Grill has, in fact, given you enough -- let me ask once

10  again -- given you and your case and all the circumstances,

11  the facts, the law applicable, everything that could

12  possibly bear upon your decision, that she herself has come

13  to understand them and explain them to you in a way that

14  you comprehend so that you are confident that you really

15  are able to make the choice of what's best for you?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  Did you understand my question?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Little convoluted.  Okay.  Have any

20  threats or promises been made to you by anyone, anyone

21  representing the government, Ms. Grill, anyone representing

22  me or The Court or anybody else, any third party, or any

23  family member or anybody else, any threat to do you or

24  anybody close to you any kind of harm, physical, emotional,

25  financial harm or injury of any kind, has any threat been

1  made by anybody that has influenced your decision to plead

2  guilty?

3          THE DEFENDANT:  No, Your Honor.

4          THE COURT:  Okay.  I understand that in one sense

5  there's the threat of a worse outcome, that isn't really a

6  threat -- that's not the kind of threat I'm talking about,

7  do you understand that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Likewise, has anybody made any

10  promise to you, anybody on behalf of the government,

11  prosecutor's office, Ms. Grill, on behalf of The Court or a

12  third party made any promise to you of any benefit of any

13  kind or benefit to a third party except the promises that

14  the government has included in the plea agreement?

15          THE DEFENDANT:  No, Your Honor.

16          THE COURT:  Okay.  And you had ample opportunity

17  to consult with Ms. Grill about all of this, is that fair

18  to conclude?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Okay.  There'll be a finding that

21  defendant's offer of a plea, when and if it happens, will

22  be knowing, intelligent and voluntary.

23          Mr. Freeman, I will now ask you to do the two

24  things I indicated.  First, to present, in summary form,

25  the factual basis for the plea that you believe the

1    government's evidence would sustain and enable a rationale

2    jury to find the defendant guilty beyond a reasonable doubt

3    of both charges, and, likewise, if you could then comment

4    upon any salient aspects of the plea agreement that would

5    be called to my attention, or the presence of which I

6    should confirm with Ms. Lecron.

7              Before doing that, Ms. Lecron, did you read the

8    plea agreement?

9              THE DEFENDANT:  Yes, Your Honor.

10             THE COURT:  Did Ms. Grill go over it with you?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  Whatever questions or concerns that

13   you may have had, were you able to express them to her, and

14   did she respond to them adequately and satisfactorily?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  Are you thoroughly and completely

17   confident that, indeed, the explanation that she has

18   provided was not just comprehensible but comprehensive?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Is there anything, again, that she's

21   left undone that you wanted her to do before coming here

22   today?

23             THE DEFENDANT:  No, Your Honor.

24             THE COURT:  Mr. Freeman, so, first, the factual

25   basis, and then, as I say, any salient aspects of the plea

1   agreement, including the 11(c)(1)(c) nature of that

2   agreement?

3        MR. FREEMAN:  Yes, Your Honor.  Beginning with

4   the factual basis, a summary of the evidence that could be

5   proven beyond a reasonable doubt at trial begins on Page 6

6   of the plea agreement and goes all the way to the bottom of

7   Page 9.

8        For Count 1 of the superseding information, which

9   is conspiracy to provide material support and resources to

10  terrorists:  From in or around April of 2018 to

11  December 10th of 2018, in the Northern District of Ohio,

12  Western Division, defendant Elizabeth R. Lecron did

13  knowingly and intentionally conspire, combine and agree

14  with Vincent Armstrong to provide material support and

15  resources, and to conceal and disguise the nature,

16  location, source, and ownership of material support and

17  resources, to wit property, services and personnel

18  including themselves, knowing and intending that they were

19  to be used in preparation for and in carrying out

20  violations of Title 18, United States Code Section 844(i),

21  which is malicious damage and destruction of property by

22  fire and explosive materials.

23        And in 2332A, which is the use of weapons of mass

24  destructions, defendant Elizabeth R. Lecron, met Vincent

25  Armstrong in approximately February of 2018.  They started

1  dating a few months later and moved in together at a

2  residence in Toledo, Ohio.  Shortly after meeting, Lecron

3  expressed her interest in mass murders to him and

4  introduced Armstrong to the, quote, true crime community,

5  end quote, commonly referred to as the TCC.  The TCC was a

6  group that operated across numerous social media platforms

7  that fixated and lionized mass murderers with its members,

8  posting extremely graphic images, videos and sayings.

9  Lecron primarily used Tumblr to participate in this group

10  under the user name, quote, ligaturemarkings, end quote,

11  and then later under, quote, charlestonchurchmiracle, end

12  quote.  Armstrong joined the Tumblr TCC community using the

13  profile name, quote, societysheretic, unquote.

14          Lecron routinely posted items about the Columbine

15  High School shooter and Charleston Church shooter,

16  including calling them, quote, God like.  Armstrong made

17  TCC posts including words, quote, I wanna contribute to the

18  chaos, end quote.

19          Lecron and Armstrong privately discussed

20  committing their own mass murder in the Toledo area.  They

21  referred to this attack as D-Day.  They discuss using both

22  guns and explosives during the attack to kill, injury and

23  intimidate people.  They took several steps in preparation

24  for D-Day.  Armstrong owned an AK-47 semi-automatic rifle

25  prior to the formulation of the plan; however, Lecron

1  purchased a Savage shotgun with Armstrong.  Both guns were

2  to be used during the attack.  Additionally, Lecron and

3  Armstrong went to the shooting range to practice their

4  firearm skills.

5          Lecron showed Armstrong a website that had

6  detailed instruction on how to make improvised bombs that

7  they continued to use during the attack.  Armstrong visited

8  the website and printed the instructions to make a pipe

9  bomb.  Lecron and Armstrong agreed to buy parts for the

10  pipe bomb, specifically on June 3rd of 2018.  Armstrong

11  purchased end caps and a drill from a local hardware store.

12  They discussed the additional parts still needed like the

13  guts, meaning the explosive materials.

14          THE COURT:  I'm sorry, like the what?

15          MR. FREEMAN:  Guts, G-U-T-S.

16          THE COURT:  Okay.

17          MR. FREEMAN:  They agreed to build the pipe bomb

18  together and to use them during the planned attack.  Lecron

19  and Armstrong agreed on what they were going to wear during

20  the attack.  Armstrong purchased a trench coat and a

21  T-shirt that read, quote, Society Failed Us, end quote.

22  Lecron purchased combat boots, T-shirt that read False

23  Prophet, end quote.

24          Lecron and Armstrong discussed several possible

25  targets of this attack, to include attacks at a local mall

1    during an annual costume party, and at a second floor bar

2    in downtown Toledo, but ultimately they settled on the

3    second floor bar.  This bar was engaged in activity that

4    affected interstate commerce.  Lecron and Armstrong agreed

5    to use the explosives they were building together and the

6    firearms to commit the attack at the bar, knowing and

7    intending that they would cause damage to the bar and

8    injure and kill people in the bar.

9            Armstrong wrote about D-Day in his journal,

10   specifically in a journal entry dated June 8th of 2018,

11   Armstrong wrote, quote, now I have these thoughts.  These

12   memories, they haunt me.  I have a vision, a vision to

13   kill, to hunt the unwilling, these peasants to society, the

14   hatred to the human race is bewildering, it feels so good

15   to know I will end it all very soon.  I'm buying a knife

16   this weekend to slay my prey, to shake things up in the

17   world.  I have also bought caps from a local hardware store

18   for bombs, pipe bombs to be exact.  Soon we will bring

19   destruction on society.  Fuck them.  They are worthless

20   Ungodlike scum who want to live by their rules and

21   constructs, end quote.  Below the text there's a stick

22   figure drawing of a person shooting another person in the

23   head.

24           Lecron made similar journal entries in her own

25   diary about D-Day.  In a journal entry dated June 5th of

1    2018, Lecron wrote that visiting friends this weekend was

2    exhausting but that, quote, D-Day will be my salvation, end

3    quote.  In a journal entry dated June 8th of 2018 she

4    wrote, quote, Vinny, referring to Mr. Armstrong, and I got

5    into a fight last night, not really a fight, fight but I

6    caught him being dishonest.  I'm really hurt.  Truly.  Why

7    does this happen to me?  I still love him immensely and

8    D-Day is on track, end quote.

9           In a journal entry dated June 12th of 2018,

10   Lecron wrote, quote, I have to practice with my Savage,

11   referring to her shotgun, more.  I'm not good enough yet,

12   practice makes perfect, end quote.  Below the entry is a

13   drawing of a dead angel.

14          In August of 2018 Lecron and Armstrong flew from

15   Detroit to Denver to visit the sites related to the

16   shooting at Columbine High School.  Lecron detailed this

17   trip on her Tumblr profile.  She posted photographs at

18   Columbine High School and the victims' memorial.  In these

19   posts, Lecron stated their next trip would be to Charleston

20   to visit, quote, the church, end quote, a reference to the

21   mass murder that occurred there.

22          Lecron and Armstrong devised their cover-up story

23   if they were caught planning or committing their D-Day

24   attack, specifically they agreed to tell others that their

25   plan to commit mass murder was merely, quote, role playing,

1    end quote.

2            On December 10th of 2018, law enforcement

3    executed a search warrant at their house and vehicles.  In

4    the trunk of Armstrong's vehicle was a duffle bag

5    containing a tactical vest with two loaded magazines for an

6    AK-47, two loaded magazines for a pistol, a white T-shirt

7    with black letters with, quote, Society Failed Us, end

8    quote.  A black trench coat, gas masks, a printout from a

9    website with instructions on how to construct various

10   bombs, and instructions to pick a lock.  In the residence

11   law enforcement seized an AK-47, two shotguns, including

12   the one purchased by Lecron, two handguns, and ammunition

13   for the guns.

14           In reference to Count 2 of the superseding

15   information, on or about December 8th of 2018 in the

16   Northern District of Ohio, Western Division, defendant

17   Elizabeth R. Lecron, did transport and receive, and

18   attempted to transport and receive, in interstate commerce

19   explosive materials, to wit:  Hodgdon Triple Seven

20   Muzzleloading Propellant, with the knowledge and intent

21   that the explosive material would be used to kill, injure

22   and intimidate any individual, and unlawfully to damage and

23   destroy any building, vehicle or other real or personal

24   property.

25           In August of 2018, Lecron began communicating

1   with a confidential human source referred to as a C.H.S, on

2   Tumblr's TCC group about mass shootings and tragedies.

3   Through the conversation Lecron learned that the C.H.S was

4   from Northwest Ohio and invited him or her to meet in

5   person.  The two met several times in Toledo, including at

6   a second floor bar.  During these in-person meetings,

7   Lecron expressed her interest in conducting a violent

8   attack.

9           On September 11, 2018, C.H.S introduced Lecron to

10  two other like-minded people who were actually undercover

11  agents with the Federal Bureau of Investigation.  The

12  undercover agents posed as experienced extremists with the

13  capabilities of conducting a sophisticated attack as she

14  had desired.  During the meeting, the four individuals

15  discussed conducting a bombing attack.  Lecron said I want

16  to get -- I want to get out there.  I want to, like, you

17  know, be part of it, you know, I want to help any way I

18  can.  I've never had an in to this sort of thing, so now

19  that I do, I just want to do anything I can.  I originally

20  had an idea to, ah, to disrupt a slaughter house, but for

21  the life of me I cannot find it.  I want to disrupt

22  something like that, end quote.  When asked by the

23  undercover agent if she had any concern about human

24  casualties, Lecron replied, quote, take them out.  I don't

25  really feel any type of way for that.  I'm here to send a

1    message and to get the job done.  If they are in the way of

2    the explosion, they're probably part of the problem so

3    maybe it's for the best, end quote.

4            On December 4 of 2018, C.H.S. called Lecron to

5    ask for help in a plan to bomb a pipeline in Georgia.

6    C.H.S. stated, quote, anyway what we need help with is --

7    it is really suspicious when someone goes into, like, a

8    sporting goods store and buys, you know, 10 or 20 pounds of

9    black powder, so we're looking for people to help spread it

10   out and buy, like, three or four pounds for these pipe

11   bombs.  So if you're willing to, like this weekend to or

12   something, just pick up, like, two or three pounds, even

13   that would be an enormous help, end quote.  Lecron replied,

14   quote, absolutely, end quote, and she -- and that she could

15   purchase the black powder that weekend.  Lecron concluded

16   the conversation, quote, thank you so much.  Hell, yeah,

17   this is exactly what I wanted to do, end quote.

18           On December 8th, 2018 Lecron purchased two pounds

19   of Hodgdon Triple Seven Muzzleloading Propellant from a

20   retailer in Rossford, Ohio.  The product was manufactured

21   in Kansas.  Lecron then purchased 665 screws from another

22   retailer nearby.  She gave both the propellant and the

23   screws to C.H.S.  After giving the items to C.H.S, Lecron

24   said, quote, so I guess I'll talk to you when the deed,

25   referring to the bombing of the pipeline, is done.  I'm

1    very excited.  Stick it to him, man.  Be safe.  And left.

2              The defendant understands that those are just

3    summaries and not -- does not set forth each and every fact

4    that could be proven at trial.

5              THE COURT:  Ms. Lecron, did you hear that

6    recitation?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Is it all true, correct, and

9    accurate?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Is there any way in which it is not

12   accurate or correct?

13             THE DEFENDANT:  No, Your Honor.

14             THE COURT:  And would you agree with Mr. Freeman,

15   that the government has other evidence that it could use if

16   it chose to do so in the event there were a trial?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  Okay.  And that that evidence,

19   according to your understanding, would likewise be

20   inculpatory and further its ability to have a jury find you

21   guilty beyond a reasonable doubt, is that your

22   understanding?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  Okay.  There will be a finding that

25   there's an adequate factual basis to sustain a jury if that

1    evidence were presented to it, and a finding of guilty

2    beyond a reasonable doubt of each of the two charges.

3             Mr. Freeman, are there other aspects of this

4    agreement which I know requires my acceptance of it and its

5    terms and conditions in order for it to become -- come into

6    effect?  Is there anything else that you think --

7             MR. FREEMAN:  Yes, Your Honor.  I just have a few

8    loose ends that I would like to put on the record.  One,

9    that in exchange for her guilty plea here today to Count 1

10   and 2 of the superseding information, United States

11   Attorney's Office does agree not to bring any other

12   criminal charge against this defendant related to conduct

13   charged in the information, and/or described in the

14   factual -- factual basis, that is within the knowledge of

15   the U.S. Attorney's Office at the -- at today's date, the

16   date of the execution of the plea agreement.

17            There's also a few other miscellaneous, that she

18   understands that if she breaches any promise in this

19   agreement, commits additional crimes, obstructs justice, or

20   attempts to withdraw this guilty plea, or it is rejected or

21   vacated or set aside, that the United States Attorney's

22   Office will be released from all of its obligations and

23   could pursue or add additional charges as deemed necessary.

24   This agreement is only binding on the United States

25   Attorney's Office for the Northern District of Ohio, and

1   that each party are free to advocate or advise The Court of

2   things not expressly addressed within the plea agreement.

3   And I think it is worth noting just one more time that the

4   crux of the written plea agreement before The Court to

5   accept is that if she were to plead guilty, that the

6   parties agree, and The Court agrees, to sentence her to 15

7   years of imprisonment with a lifetime of supervision.

8              THE COURT:  Did you hear all that and understand

9   it?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  And is that your understanding of

12  what, at least in part, the plea agreement contains?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  You've read the plea agreement?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  I've asked you that.  You've gone

17  over it with Ms. Grill?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  Are you fully and completely

20  satisfied that it is your decision and in your best

21  interest to sign the plea agreement; and upon its

22  acceptance by me, to offer pleas of guilty to the first two

23  counts in the superseding information?

24             THE DEFENDANT:  Yes, Your Honor.

25             THE COURT:  You understood my question?

1             THE DEFENDANT:  Yes.  Yes, Your Honor.

2             THE COURT:  Okay.  One minute, please.  I'm

3    familiar with the terms and conditions of plea agreement.

4    I believe that defendant is competent to plead guilty.  She

5    understands the -- her right to trial and attendant rights,

6    she understands the waiver of the rights which I have

7    enumerated, except the right to counsel and the right,

8    under very limited circumstances, to appeal.  You do

9    understand that in the event you were in any way whatsoever

10   to breach any condition of the plea agreement, to speak

11   plainly, all bets are off, the government has returned to

12   the position that it was in before you decided to enter the

13   plea agreement, that is to prosecute you for these charges

14   and any other charges that it thought it could prove, and

15   to seek the maximum potential sentence that would follow

16   upon conviction of those charges, you understand that?

17            THE DEFENDANT:  Yes, Your Honor.

18            THE COURT:  In other words, you are -- you both

19   are bound, and more importantly, you understand the

20   consequences of changing your mind once I've accepted the

21   plea or otherwise challenge -- challenging any of the terms

22   or conditions of consequences, except in the very limited

23   way that I tried to describe to you earlier, do you

24   understand that?

25            THE DEFENDANT:  Yes, Your Honor.

 1             THE COURT:  If you do so, the government is

 2    released entirely from its obligations and can prosecute

 3    you as fully and as vigorously as it could -- as it could

 4    had you never pled guilty, do you understand that?

 5             THE DEFENDANT:  Yes, Your Honor.

 6             THE COURT:  You also understand that any

 7    statements you have made, including your acknowledgment

 8    this afternoon of the truthfulness and accuracy of the

 9    statements that were just recited, could be used against

10    you in the event the plea agreement and plea were

11    abrogated, that government proceeded to charge you and

12    prosecute you, do you understand that?

13             THE DEFENDANT:  Yes, Your Honor.

14             THE COURT:  Okay.  There will be a finding that

15    the defendant's plea, when it is offered, to repeat, it

16    will be offering knowingly, intelligently and voluntarily,

17    that with full cognizance of the nature of the charges, the

18    consequences of conviction, that there's an ample and

19    adequate factual basis to sustain a conviction.  If that

20    were the evidence presented by the government to the -- to

21    a jury, and I believe unquestionably that the government

22    has the wherewithal and would be legally and able to

23    present that evidence for the jury's consideration, and I

24    do find that the plea agreement is acceptable.  I will, at

25    the time of sentencing, abide by its agreements and impose

1   a term of 15 years on Count 1, ten years on Count 2, a term

2   of life supervised release as to Count 1, with the three

3   years as to Count 2.  That term to run consecutively --

4   concurrently with the life term of supervised release.

5   There will be a special assessment of $100.  There'll be no

6   fine or restitution.

7          Anything else I need to say about my acceptance

8   of the terms and conditions of the Rule 11(c)(1)(c) plea

9   agreement, Mr. Freeman?

10          MR. FREEMAN:  Just a few things, Your Honor,

11  that, one, there's a defendant's initial block at the

12  bottom of each page, and ultimately her signature, that by

13  her affixing her initials and signature that she

14  understands the terms and conditions of the plea agreement,

15  and that she will do so here in court.  And then ultimately

16  The Court will ask her for her plea of guilty to Count 1

17  and 2.

18          THE COURT:  Yeah, I'll do that afterwards.

19  Ms. Grill, is there anything further that I should explain,

20  inquire about, or find out -- find and conclude?

21          MS. GRILL:  I don't believe so, Your Honor.  We

22  just need to execute the agreement.

23          THE COURT:  Okay.  Ms. Lecron, I now ask you to

24  review the plea agreement with Ms. Grill, let her know if

25  you have any questions or concerns.  And if not, then

1    proceed accordingly.

2              Ms. Lecron, let me ask you, if I can, call

3    upon -- let me ask you before I call upon you to offer

4    your -- what plea do you offer, is there any way whatsoever

5    in which you have any doubts -- is there any way -- first

6    of all -- excuse me.  Let me strike all that.

7              Is there anything of any sort that you, in any

8    way, believe that you do not understand?

9              THE DEFENDANT:  No, Your Honor.

10             THE COURT:  Is there anything about Ms. Grill's

11   representation that you either disagree with or that you

12   believe in any way whatsoever has been insufficient?

13             THE DEFENDANT:  No, Your Honor.

14             THE COURT:  Do you feel well and adequately

15   represented?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  Quite candidly, do you think The

18   Court could have appointed you a better or more competent

19   attorney than Ms. Grill?

20             THE DEFENDANT:  No, Your Honor.

21             THE COURT:  Neither do I in all sincerity.

22             THE DEFENDANT:  I agree.

23             THE COURT:  Do you have any hesitation about

24   having agreed to the plea agreement, signed it, and in a

25   moment or two offering a plea of guilty as provided in that

1   agreement?

2           THE DEFENDANT:  No, Your Honor.

3           THE COURT:  And it is what you want to do?

4           THE DEFENDANT:  Yes, Your Honor.

5           THE COURT:  You've had an ample opportunity to

6   consult with her, and perhaps others, but as you sit here

7   right now, this is your choice, made to the maximum extent,

8   freely and voluntarily, because it's what, given all the

9   facts and circumstances that bring you here today, it is in

10  your best interest to take this step, is that correct?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Okay.  So I ask you, what is your

13  plea to Count 1 of the superseding information?

14          THE DEFENDANT:  Guilty, Your Honor.

15          THE COURT:  What is your plea to Count 2 of the

16  superseding information?

17          THE DEFENDANT:  Guilty, Your Honor.

18          THE COURT:  Okay.  I've already indicated that

19  I'm familiar with the terms and conditions of the plea --

20  excuse me, with the plea agreement, with the factual basis,

21  and the principle condition that this is binding upon the

22  government and the defendant, subject to the condition that

23  I find it to be acceptable, and ultimately in the best

24  interest of United States government and the people whom it

25  represents, I do so.

1               Let me also say, because there's one other thing

2    that occurred to me, Ms. Grill, I assume without going into

3    detail, that you undertook to explain any theories of

4    entrapment or inducement or whatever, and that you are

5    persuaded, as I am, that the government's conduct of its

6    investigation gave no reason to have any -- any expectation

7    or and anticipation that that, in any way whatsoever, would

8    be a viable defense, is that a fair inference for me to

9    draw?

10              MS. GRILL:  Yes, Your Honor.  We've discussed all

11   the potential defenses.

12              THE COURT:  Because all too commonly that's sort

13   of an impression that people have, in many cases,

14   especially cases like this.  And it's -- it is, in my

15   experience, at least in cases that I've had here, always a

16   misimpression.  Just by way of -- it were disclosure,

17   through conversations with counsel for the parties, I've

18   been appraised of some of the facts and circumstances of

19   the investigation.  It's my understanding, and Mr. Freeman,

20   Ms. Tangeman, you can correct me if I'm wrong because I do

21   not want to overstate it, but that some very significant

22   steps have been taken, that the conspiracy had been formed?

23   In other words, Ms. Lecron and Mr. Armstrong had reached an

24   agreement to commit a series of unlawful acts which

25   ultimately fall within the definition of the two statutes

1    to which she'd pled guilty, and that not only had they

2    reached that agreement to commit those unlawful acts, and

3    they had done so knowingly and -- and intentionally and

4    deliberately, they had also taken certain very substantial

5    steps, committed what we call overt acts, but, in fact, it

6    had gotten underway with doing some of the things essential

7    to accomplish those unlawful acts before their activities

8    and plans had become known to the government; is that

9    correct, Mr. Freeman?

10           MR. FREEMAN:  That's correct, Your Honor.

11           THE COURT:  That, in fact, although the

12    conspiracy was a long way from accomplishment of its

13    preparation, or certainly its accomplishment of its

14    objective to cause injury, potentially death on a very

15    substantial scale, potentially of dozens of people, is that

16    a fair description of what might have happened had this

17    investigation not been undertaken and reached a successful

18    conclusion?

19           MR. FREEMAN:  It is, Your Honor.

20           THE COURT:  And that once a private citizen who

21    somehow had become aware of these plans, I don't know

22    whether aware of any of the steps that had been taken, but

23    at least what these two individuals had in mind, and

24    apparently to a serious degree, that private individual

25    came forward and informed the government; is that correct?

1          MR. FREEMAN:  We did receive a tip, Your Honor,

2     that's correct.

3          THE COURT:  Received a tip, but received

4     sufficient information to cause the investigation to get

5     underway; is that correct?

6          MR. FREEMAN:  That's correct, Your Honor.

7          THE COURT:  And when it did, I simply want to

8     confirm that, in fact, substantial, but by no means

9     complete or fully accomplished or perfected steps had been

10    taken in the direction of committing those crimes; is that

11    correct?

12         MR. FREEMAN:  That's correct, Your Honor.

13         THE COURT:  I say that simply, quite candidly and

14    publicly, I wish to acknowledge that that individual did

15    so, he or she may or may not have apprehended some adverse

16    consequence that might come to him or her, but I simply

17    want to say whoever that person is, I don't know, I never

18    will know, and I trust that the public itself may never

19    know.  Ms. Lecron, you and Mr. Armstrong, and I will make

20    this clear at time of sentencing, to the extent you suspect

21    or think you know whoever that individual is whose

22    willingness to make the government and authorities aware of

23    what was going on and, in effect, put in motion what brings

24    you here today, I trust you understand and have been dually

25    cautioned, both by governmental authorities and Ms. Grill

1    and perhaps others, that if you think you know or do know

2    that individual, you are never to have any contact,

3    directly or indirectly.  You're never to reach out to,

4    associate with or in any way attempt to influence or cause

5    harm to that individual whatsoever.  I'm sure you

6    understand that.

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Okay.  Also wish to commend the work

9    of the -- and I assume they're both local and federal law

10   enforcement agents who make up, according to my

11   understanding, the joint counter terrorism task force who

12   obviously diligently and successfully and entirely within

13   the bounds of the law, particularly as they do relate to

14   inducement and entrapment, brought this investigation to

15   its clearly successful and appropriate solution, and to its

16   end and to conclusion.  In doing so, the work that you

17   undertook and -- at the -- based upon the information that

18   you received, quite otherwise had not been accomplished,

19   and in which case we would have had a mass murder of an

20   unimaginable scope and dimensions here in our own Toledo

21   community, which, quite candidly, I think for all sensible

22   rationale people, and I hope for you, Ms. Lecron, and

23   Mr. Armstrong, is a frightful thing to consider.  I

24   certainly hope that at the time of sentencing you're able

25   to persuade me that you understand just how frightful what

1  you had in mind was and would have been, and I hope for

2  your sake and your own well being that you find it in

3  yourself truly to be remorseful, not that you were caught,

4  not that you're convicted, not that you'll be sentenced,

5  but, in fact, that you understand just how dreadful and

6  humane and inexcusable the things that you were planning

7  and intended to do, and I'm persuaded, beyond a reasonable

8  doubt, that you, in fact, intended to kill dozens or at

9  least several innocent people, probably several young

10  people of your own age cohort, and to injure, probably

11  permanently, to a greater or less extent, dozens of other

12  persons in a public location for reasons that, quite

13  candidly, I find incomprehensible and inexplicable.  But I

14  do hope some day whatever feelings you may feel today, no

15  doubt of regret that you are here today, no doubt that

16  you've been prosecuted, apprehended and prosecuted,

17  convicted, and will stand sentence some day -- regret is

18  understandable, you've ruined a life, to a large extent

19  that might otherwise have been full of hope, promise and

20  success, but that's not the same as true remorse, really

21  isn't.

22        But in any event, in closing, I also wish to

23  commend the work of the United States Attorney's Office,

24  and most particularly your work, Ms. Grill.  I've become

25  familiar over the years with the qualities that each of you

1    individually and institutionally represent and the work

2    that you do on behalf of your -- of your clients and on

3    behalf, ultimately, both of you, for the citizens and the

4    society which you serve, and I commend all of you for that.

5               Is there anything further on behalf of the

6    government?

7               MR. FREEMAN:  No, Your Honor.  Thank you.

8               THE COURT:  Ms. Grill, is there anything further?

9               MS. GRILL:  No, Your Honor.  Thank you.

10              THE COURT:  That will conclude these proceedings.

11   Sentencing will occur in about 14 weeks.  You'll be visited

12   by a probation officer, you have the absolute right to have

13   your lawyer with you, and you should.

14              You'll receive copies to review of the

15   Presentence Report, right to make objections, and after

16   which time sentencing will occur on what date, Deanna?

17              COURTROOM DEPUTY:  Judge, we'll set that at a

18   later date.

19              THE COURT:  We'll set it at a later date, that's

20   fine.

21              That will conclude these proceedings.  Thank you.

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3            I certify that the foregoing is a correct transcript

 4       from the record of proceedings in the above-entitled matter.

 5

 6       s:/Angela D. Nixon              September 30, 2019

 7       --------------------------              -----------

 8       Angela D. Nixon, RMR, CRR       Date

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```